(C. D. 102)

A. KLINGELHOFER *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 17, 1939)

*Siegel & Mandell* (*Samuel T. Siegel* of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Webster J. Oliver* and *Richard E. FitzGibbon*, special attorneys, and *Joseph A. Howard, Jr.*, junior attorney), for the defendant.

Dallinger, Judge: These are suits against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation of flexible shafts, cores, and casings. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said articles are properly dutiable at 27½ per centum ad valorem under paragraph 372 of said act as machines or parts thereof not specially provided for.

A representative sample of the flexible shafts was admitted in evidence as Illustrative Exhibit A and a printed leaflet depicting a flexible shaft similar to Illustrative Exhibit A attached to a polishing machine was admitted in evidence as Illustrative Exhibit B.

In addition to the exhibits the only testimony offered herein on behalf of the plaintiff was that of Albert Klingelhofer, the importer herein, no evidence having been offered by the Government.

He testified that the flexible shafts covered by Illustrative Exhibit A were constructed to be used only with the attached polishing machine, as shown in Illustrative Exhibit B, and that the power used was electricity furnished by an electric motor.

On cross-examination he testified that any machine or tool thus operated by a flexible shaft, in his opinion, was a flexible shaft machine; that the use of a flexible shaft makes a tool movable; that a flexible shaft extends the power of the motor to the tool; that there are on the market many different types of machines and tools operated with the aid of flexible shafts; that the flexible shafts in question are used for various types of tool work; that what the witness claimed to be a machine in the instant case consists of a motor, a flexible shaft, and a tool at the end; that Illustrative Exhibit A represented the condition in which the merchandise was imported except that the hand piece was packed separately; that the cores in the casings came together, the hand piece being wrapped separately; that a different hand piece could not be attached to the flexible shaft because of specific fittings; that he purchased flexible cores separately in coils which he sold in lengths for flexible shafts; that he sold them just the same as belting and chain; that his purchasers used the flexible cores to make flexible shafts which are used in various industries such as for grinding glassware, woodwork, and metal work; and that in the case of *Henry A. Wess, Inc.* v. *United States*, Abstract 26564, 65 Treas. Dec. 1206, the flexible shaft there involved was used with a concrete-surface grinder; that the flexible shaft shown by Illustrative Exhibit A is not an integral part of the motor end of the tool; that the particular shaft at bar was made for the polishing machine depicted in Illustrative Exhibit B; that the flexible shaft in question is an integral

part of the tool that is inserted in the end piece; that the tool inserted in the end piece and the flexible shaft cause the tool to rotate; that if the witness ordered 100 feet of No. 8 steel flexible coring he would get the merchandise inside of the rubber casing without the attachment and without fittings; that the rubber casing is a standard rubber casing for holding steel coring such as in the instant case and that this particular flexible shaft transmits power from the shaft to the motor.

On redirect examination he testified that the machine shown in Illustrative Exhibit B could not be used without the flexible shaft represented by Illustrative Exhibit A; and that the particular flexible shaft represented by Illustrative Exhibit A was especially designed for the machine with which it is shown to be connected in Illustrative Exhibit B.

Upon this record we are of the opinion that this case is on all fours with the case of *Henry A. Wess, Inc.* v. *United States*, Abstract 26564, 65 Treas. Dec. 1206. That case involved the question of the proper dutiable classification of a certain flexible steel shaft with rubber coating thereon, apparently similar in all material respects to the imported merchandise herein. It was employed to transmit power to a certain grinding machine used in concrete-surfacing work. In that case we said:

The record and the samples in evidence show the imported articles to be flexible steel shafts with a rubber coating thereon. They are employed to transmit the motivating power to certain grinding machines used in concrete-surfacing work. As stated by the witness, the shaft "transmits the power in a mechanical way from the source of power to the tool somewhat as a belt does." He explained that "a belt cannot always be used on the outside so this (the shaft) actually replaces a belt in power transmission." While the particular machines for which the imported shafts are intended are electrically operated through the medium of a motor, there is nothing about the shafts themselves to show that they were specially designed or constructed for use in connection with electrical machines. Although the witness testified that they are chiefly used in conjunction with machines driven by gas engines, he nevertheless admitted it was true, as he had previously stated to two customs officials, that the shafts are chiefly used in connection with machines operated by electric power.

But are such shafts, strictly speaking, parts of machines, within the meaning of said paragraph 372? We think not. At best, they function merely as auxiliary attachments or appurtenances and are simply the media through which the motivating power is transmitted to the machine proper. In this respect they function precisely as do belts. Indeed, it may be said that these shafts are used in lieu of belts. Since such is their sole use, they are no more parts of machines than are belts so classifiable.

In *Johnson Iron Works, Dry Dock & S. B. Co.* v. *United States* (T. D. 41132, 48 Treas. Dec. 237) we said:

Merely because a dynamo is connected by a belt with the machine which supplies the operating power does not make the dynamo part of the power machine. Each is a complete machine in itself, but when used together the two and the connecting belt might properly be called "machinery" without making the belt a part of either machine or one machine a part of the other.

The said decision was cited with approval in our later ruling in *G. W. Sheldon & Co.* v. *United States* (T. D. 42315, 52 Treas. Dec. 48). There, the importation involved was described by the appraiser as "parts of a complete, made-to-specification machine for generating electricity," and the collector levied duty thereon as an entirety at the rate of 30 percent ad valorem under the provision in paragraph 372 of the act of 1922 for "machines or parts thereof, * * * not specially provided for." Of such classification this court said:

"As to the merits of the question presented by the protest, we experience no hesitancy in holding, as matter of law, that it was error on the part of the collector to classify this entire importation as though it consisted of a single machine, when as matter of fact the uncontradicted testimony of all of the witnesses who have appeared herein conclusively and overwhelmingly establishes that the shipment comprised at least nine complete machines, to say nothing of numerous items representing accessories, appurtenances, and auxiliary equipment required to install the machines in place as a complete unit or plant, but which items the record shows form no part of any one of the machines proper.

If the tariff provision invoked by plaintiff read "machinery or parts thereof" there possibly would be some logic in contending that these shafts constituted an integral part of the concrete-surfacing machine above referred to. But being merely the intermediary through which the electric current is transmitted from the power-generating mechanism to the machine which utilizes it as a motivating force, it follows that such intermediary is no more a part of the one machine than it is a part of the other.

In *Norma Co. of America* v. *United States* (6 Ct. Cust. Appls. 89, T. D. 35338) the appellate court, holding certain articles to be integral parts of a machine tool, said:

We think, speaking generally, the true interpretation of the paragraph is that any detachable or adjustable parts of a machine tool which are indispensable to enable it to perform the manifold operations for which it is designed, if imported therewith, not including reserve, duplicate, extra, or spare parts or purely hand tools or appliances, *and not including belts designed to connect the tool with the motive power*, are properly parts of a machine tool. [Italics ours.]

We think that the most that may be said of the steel shafts in question is that, like the belts referred to, they are designed to connect the machine with the power mechanism which operates it. Such connecting shafts are not necessary to the integrity of either the power-generating or the power-utilizing mechanism. We can see no force to the contention that such shafts form parts of either machines, and such a claim is negatived by the prevailing decisions on the subject.

On the facts and the law applicable thereto it follows that it was error on the part of the collector to have classified these shafts as parts of electrical mechanisms under paragraph 353. We are satisfied that they should have been held dutiable at the rate of 45 percent ad valorem under paragraph 397 of said act as manufactures of metal not specially provided for. However, since that claim was not alleged by the plaintiff, the collector's decision, although it be erroneous, must nevertheless stand. All claims of the plaintiff are overruled, and judgment will be rendered accordingly.

On the established facts herein we see no reason for not following our cited decision in the present case. We therefore hold the instant flexible shafts to be properly dutiable at the rate of 45 per centum ad valorem under paragraph 397 of said act as manufactures of metal not specially provided for, as classified by the collector. All claims of the plaintiff are therefore overruled. Judgment will be rendered accordingly.