(C.D. 3921)

MADER & CO. ET AL. *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 14, 1969)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Owen J. Rader* and *Robert E. Burke*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

RE, Judge: The merchandise in these seven protests, consolidated for trial is described on the invoices as extra spools or spare line spools. The spools are made to be attached and used with the fishing reel number 280, also known as the Finessa reel. These "extra" or "spare" spools were classified under paragraph 1535 of the Tariff Act of 1930, as modified by T.D. 54108, as "Parts of fishing reels", and were assessed duty at the rate of 34 percent ad valorem. Although there is no question that the spools are properly classifiable under paragraph 1535, plaintiffs maintain, however, that they should be classified as entireties, with the fishing reels with which they were imported, and which have been assessed duty of $1.27 rather than with the additional duty as "Parts of fishing reels".

Paragraph 1535 of the Tariff Act of 1930, as modified by T.D. 54108, provides:

| | |
|---|---|
| "Fishing reels, finished or unfinished, not specially provided for_____ | $1.27 each but not less than 15% nor more than 46½% ad val. |
| Parts of fishing reels, finished or unfinished, not specially provided for_____ | 34% ad val." |

The plaintiffs contend that the merchandise is the same in all material respects as the extra or spare spools in the case of *United States v. Charles Garcia & Co., Inc.*, 48 CCPA 140, C.A.D. 780 (1961), which held that the spools were dutiable as an entirety with the fishing reels with which they were imported. At the beginning of the trial, plaintiffs gave notice of their intent to move into evidence the record of the *Charles Garcia & Co.* case, and without objection it was incorporated into that of the case at bar. At the conclusion of the trial, counsel for plaintiffs, in answer to a question by the trial judge, whether counsel wished to file a brief, replied that he did not "because I think the *Charles Garcia* case would be the only case I would cite. It is controlling. That record is already in this record." The court nevertheless suggested that a brief be filed, and in addition to the initial briefs there have also been submitted a reply and a sur-reply brief.

The plaintiffs called one witness, Mr. Abram Mansour, who in 1960, 1961 and 1962 was the president of Bradlow, Inc., the importer herein. About 90 percent of the merchandise imported by Bradlow, Inc., was fishing tackle, and Mr. Mansour had complete charge of the management of that firm, including supervision of the importing. After testifying that the firm dealt in "[s]pinning reels for fresh water and salt water fishing", Mr. Mansour stated that during the period in question the importations pertaining to the spinning reel number 280 were always the same and so were the spare line or extra spools. In answer to the question "Will you explain to the court whether or not the fishing reel 280, as imported, contained a spool in it as well as having a spare line spool?", Mr. Mansour replied: "In its imported condition, it had two spools, one on the reel and one in the box."

The witness testified that the spools, to be used on the number 280 or Finessa reel, were different in that "one had a small arbor and one a large arbor." He explained that each was for a different type of fishing, one for a thinner line and the other for a heavier line. Plaintiffs introduced two exhibits, consisting of two spools for use on the Finessa reel, to illustrate the difference in the size of the arbor. Mr. Mansour added that the fishing reels were sold with two spools.

Mr. Mansour was asked whether he was familiar with the "Mitchell 300" spinning reel. The spools to be attached to the "Mitchell 300" spinning reel were the subject of the protest in the *Charles Garcia & Co.* case. He stated that he had been familiar with it for many years, and had examined it many times, it being the "biggest competition." He was asked: "Could you tell the court whether or not the Mitchell 300 spininng reels with two spools were the same or different from the spinning reel 280, or Finessa with its two spools, as far as its operating mechanisms were concerned?" Mr. Mansour replied that "[t]he operating mechanism inside, in its use, it [sic] was for the same purpose and type of fishing as the Finessa reel." After this reply counsel for the plaintiffs asked no further questions. Counsel for the government did not cross-examine plaintiffs' witness and did not call any witnesses.

The case of *United States* v. *Charles Garcia & Co., Inc.*, 48 CCPA 140, C.A.D. 780 (1961), upon which plaintiffs rely, was a retrial of the protest in *Charles Garcia & Co., Inc.* v. *United States*, 45 CCPA 1, C.A.D. 663 (1957), which affirmed the judgment of this court in overruling the protest. The question presented pertained to the classification of a second spool for use with the "Mitchell 300" fishing reel. The reel and one spool were classified under paragraph 1535 of the Tariff Act of 1930 as modified by GATT, T.D. 51802, as "Fishing reels" and the second spool was classified under the same paragraph, as modified, with an additional duty of 40 per centum ad valorem,

as "Parts of fishing * * * reels". The plaintiff therein claimed that the entire unit package, the reel and the two spools, was dutiable as an entirety under the provision for "Fishing reels".

In the *Charles Garcia & Co.* cases, the importations consisted of a reel mechanism, on which was mounted one interchangeable spool, and a second but different interchangeable spool enclosed in a plastic box. In a retrial of the case, the Customs Court reversed its former position and sustained the protest.

The Court of Customs and Patent Appeals, in a decision by Judge Rich which summarizes the governing principles of law, affirmed the judgment of the trial court which held the reel and the two spools to be dutiable as an entirety.

There was no question in the *Charles Garcia & Co.* cases that the applicable principles of law were set forth in the cases of *Norma Company of America* v. *United States*, 6 Ct. Cust. Appls. 89, T.D. 35338 (1915), and *George Scherr Co., Inc.* v. *United States*, 40 CCPA 6, C.A.D. 489 (1952).

In the first opinion in the *Charles Garcia & Co.* case, the Court of Customs and Patent Appeals, distinguished the *Norma Company of America* case and the *George Scherr Co.*, case, stating:

> "* * * The *Norma* case involved metal working machines, each of which was imported with a number of grinding spindles and grinding spindle extensions adapted to be used alternatively in accordance with the particular type of work being done by the machine. It was held that each machine and 'one set of such alternate parts thereof as are necessary to enable it to perform its manifold functions' were dutiable as an entirety, but that such articles as were 'duplicate, extra, or spare parts' were separately dutiable." 45 CCPA at 3.

After quoting the previous paragraph for its former opinion, the appellate court in the second *Charles Garcia & Co.* case said:

> "* * * We then referred to the spools in question as 'extra spools,' said they were not indispensable to 'the principal use' of the reels, and approved the refusal to include them with the reels as entireties, saying that the *Norma* case was distinguishable. It should be apparent that it was then our view that the second spool was an 'extra' spool within the meaning of the statement in the *Norma* case that extra parts were separately dutiable." 48 CCPA at 141.

The merchandise in the *George Scherr Co.* case consisted of "Speed Indicators Jacquet" for measuring the rotational speed of shafts, with sets of "accessory tips". In that case, the collector classified the indicators and the tips as entireties. The importer protested claiming that they were not entireties and that the tips were dutiable separately. The Court of Customs and Patent Appeals, in applying the principle

of the *Norma Company of America* case, upheld the classification stating:

> "The evidence submitted definitely establishes that the involved accessory tips are not merely surplus or extraneous parts which have an occasional, casual, or optional use, but are detachable or adjustable constituent parts of the respective speed indicators which are indispensable to the performance of the manifold operations for which the imported indicators were designed. Under such circumstances * * * the imported indicators and accessory sets of tips therefor must be regarded as entireties * * *." 40 CCPA at 7.

The two *Charles Garcia & Co.* cases highlight the importance of the "record facts". After the first trial the Customs Court held that "on the record facts, the extra spool furnished with the reels at bar is not part of a commercial and tariff entity known as a fishing reel." *Charles Garcia & Co., Inc.* v. *United States*, 37 Cust. Ct. 117, 119, C.D. 1808 (1956), affirmed 45 CCPA 1, C.A.D. 663 (1957). After the second trial, on the basis of a new record, the trial court made new findings that required that the reel and the two spools be classified as an entirety. The Customs Court stated:

> "On the basis of the facts now established by the entire record, we are satisfied that the 'ordinary and proper functions' of the reel at bar are for use in light or heavy fishing; that it was designed, made, and sold for both functions; and that the reel is incapable of performing those functions without both spools. We, therefore, hold that the two spools are constituent or integral parts of the reels at bar and that the reel and two spools are entitled to classification as an entirety." 44 Cust. Ct. 282, 291, C.D. 2187 (1960).

The Court of Customs and Patent Appeals quoted *in extenso* from the opinion of the trial court and affirmed the decision that the reel and the two spools, "on the new factual basis", are entitled to classification as an entirety. 48 CCPA at 145.

In its second decision in the *Charles Garcia & Co.* case this court found the facts "analogous in all material respects", to those in the *Norma Company of America* and the *George Scherr Co.* cases, "as to require the application of the principle of law set forth in those cases." 44 Cust. Ct. at 288.

The similarity between the merchandise in the *Charles Garcia & Co.* case and the merchandise in the case at bar cannot be denied. It can perhaps best be illustrated by the pithy statement of plaintiffs' witness that the Mitchell 300 reels "were our biggest competition." Although the record in the case presently before the court does not contain the

wealth of detail found in the record of the retrial of the *Charles Garcia & Co.* case, the cases are nevertheless similar in all material respects. As in the case of the "Mitchell 300" reel, the number 280 or Finessa reel in its imported condition had two spools, each of a different size arbor, one on the reel and the other in a box, both spools to be used on the same reel, and the different size arbor was to accommodate a thinner or heavier line for different types of fishing. From the foregoing it would seem clear that the present case comes squarely within the factual pattern controlled by the legal principles set forth in the second *Garcia* case, and that the two spools are therefore properly to be classified as an entirety with the reel. Indeed in its reply brief defendant states that "[i]n the case at bar, following the doctrine of the *Garcia* cases, *supra*, the reel and two separate types of spools for use thereon, were properly classified as an entirety." (Defendant's brief p. 4)

In its brief, however, and for the first time, the defendant makes the following assertion which plaintiff in its reply brief has characterized as "astonishing":

> "* * * It is the position of the Government that two spools, each having a different size arbor and line capacity, were properly classified as an entirety with the reel, and that a third spool, the spool in question, is a duplicate of one of the other two spools. This third spool was thus properly classified as a 'part' of a fishing reel under paragraph 1535 at 34% ad valorem." (Defendant's brief p. 1–2)

Although there was not the slightest intimation at the trial that there were three reels, defendant relies upon the special customs invoices for this contention. For example, defendant refers to entry M–2415 [2416] dated December 12, 1960 which on the invoice indicates an entry of "756 only Reels No. 280 with 2 spools" with an invoice unit price of $5.92, and that in addition there is an entry of "756 only Spare Line Spools" having an invoice unit price of $0.75. The plaintiffs reply that this "not only ignores the pencil notation connecting the 756 spare line spools as one of the 2 spools for the No. 280 reels, but also ignores the prices and descriptions on the commercial invoice as well as the packing list." (Plaintiffs' reply brief p. 1)

The court has examined the official papers and particularly the special customs invoices. In addition to printed and stamped matter, the invoices contain notations in blue ink, red ink and in pencil. And indeed the invoice for entry M–2416 does contain a pencil notation in the form of a double arrow which connects the "756 only Reels No. 280 with 2 spools" with the "756 only Spare Line Spools". The defendant in its sur-reply brief responds by saying that "[i]t is impossible

from an evidentiary point of view, to establish the exact meaning of these pencil markings by simple visual examination, and any attempt to set out a precise meaning would be based on pure conjecture." (Defendant's sur-reply brief p. 3) The foregoing observation, pertaining to the conjectural nature of this type of evidence, is not limited to the particular notation mentioned. It also applies to the other references made by the defendant in its effort to establish by argumentation in its briefs, the existence of a third spool. No citation of authority is required for the principle of advocacy that statements of fact made in the briefs, unsupported by evidence of record, are not proof. Moreover, this court has clearly held that although descriptions of merchandise in invoices, entries and other documents may be admissions against interest, they establish no more than a *prima facie* case against any contradictory claim made by the importer. For example, they do not act as an estoppel or preclude the parties from showing the true character of the goods. *Mercantil Distribuidora, S.A., et al.* v. *United States*, 33 Cust. Ct. 158, C.D. 1648 (1954). See also *United States* v. *Wo Kee & Co.*, 21 Ct. Cust. Appls. 341, T.D. 46880 (1934).

In the case at bar the most exhaustive scrutiny of the official papers will reveal nothing that can refute or rebut with any degree of certainty the categorical statement of plaintiffs' witness that the reel in its imported condition had two spools, one in the reel and one in the box. This statement by plaintiffs' witness is deemed to be the more reliable guide as to "the true character of the importation". If the defendant was of the belief that the importation consisted of three spools, clearly the trial was the time and place to litigate this crucial issue. See *United States* v. *Paul Puttmann*, 21 Ct. Cust. Appls. 135, 138, T.D. 46466 (1933). See also *Lee & Co.* v. *United States*, 15 Ct. Cust. Appls. 202, T.D. 42236 (1927).

In the case at bar, on the evidentiary record before the court, it must find that the Finessa fishing reel number 280, in its imported condition contained only two spools, each of a different size arbor and line capacity. Under the circumstances herein presented both uniformity and justice require that the principles of law set forth in *United States* v. *Charles Garcia & Co., Inc.*, 48 CCPA 140, C.A.D. 780 (1961), are applicable to the case at bar. Hence the "extra" or "spare line" spool is dutiable as an entirety, with the number 280 or Finessa reel under paragraph 1535 of the Tariff Act of 1930, modified by T.D. 54108. Since the plaintiffs have overcome the presumption of correctness that attaches to the collector's classification, the protest is sustained. Judgment will issue accordingly.