UNITED STATES *v.* CHARLES GARCIA & CO., INC. (No. 5056)[1]

United States Court of Customs and Patent Appeals, July 21, 1961

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section, for the United States.

*Siegel, Mandell & Davidson* (*Joshua M. Davidson* and *David Serko*, of counsel) for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

RICH, Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, First Division, C.D. 2187, sustaining the importer's protest to the classification of certain spools for "Mitchell 300" spinning reels used by sport fishermen.  The importations consisted of unit packages each containing one reel mechanism, on which was mounted one

---

[1] C.A.D. 780.

[2] *United States* Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

interchangeable spool, and a second but different interchangeable spool enclosed in a plastic box.

This case is a retrial of the protest which was before us in *Charles Garcia & Co., Inc.* v. *United States*, No. 4906, 45 CCPA 1, C.A.D. 663, wherein we affirmed the judgment of the Customs Court, 37 Cust. Ct. 117, C.D. 1808, overruling the protest. As appears from our former opinion, to which we refer to avoid repetition, the sole question is as to the classification of the second spool. The reel and one spool were classified under paragraph 1535, Tariff Act of 1930, as modified by GATT, T.D. 51802, as "Fishing reels" and the second spool was classified under the same paragraph, as modified by said T.D. 51802, with imposition of an additional duty of 40% ad valorem, as "Parts of fishing * * * reels."

The claim of the importer is that the entire unit package, the reel and two spools, is dutiable as an entirety under the provision for "Fishing reels." On the retrial the Customs Court, in a carefully reasoned opinion, has so held, thus reversing the position it took, and which we affirmed, in the prior case.

The cases principally relied on here, as in the former case, to establish the applicable principles of law, are *Norma Company of America* v. *United States*, 6 Ct. Cust. Appls. 89, T.D. 35338, and *George Scherr Co., Inc.* v. *United States*, 40 CCPA 6, C.A.D. 489.

In our former opinion we distinguished these cases from the case at bar on the basis of the facts. Referring to the *Norma* case, we said:

The *Norma* case involved metal working machines, each of which was imported with a number of grinding spindles and grinding spindle extensions adapted to be used alternatively in accordance with the particular type of work being done by the machines. It was held that each machine and "one set of such alternate parts thereof as are *necessary to enable it to perform its manifold functions*" were dutiable as an entirety, but that such articles as were "duplicate, extra, or spare parts" were separately dutiable. [Emphasis added.]

We then referred to the spools in question as "extra spools," said they were not indispensable to "the principal use" of the reels, and approved the refusal to include them with the reels as entireties, saying that the *Norma* case was distinguishable. It should be apparent that it was then our view that the second spool was an "extra" spool within the meaning of the statement in the *Norma* case that extra parts were separately dutiable.

The *Scherr* case involved "Speed Indicators Jacquet," for measuring the rotational speed of shafts, and sets of "accessory tips" therefor. The collector classified the indicators and the tips as entireties. The importer protested that they were not and that the tips were separately dutiable. This court merely applied the principles set forth in the *Norma* case and said:

The evidence submitted definitely establishes that the involved accessory tips are not merely *surplus or extraneous parts which have an occasional, casual, or*

*optional use,* but are detachable or adjustable constituent parts of the respective speed indicators which are *indispensable to the performance of the manifold operations* for which the imported indicators were designed. Under such circumstances, * * * the imported indicators and accessory sets of tips therefor must be regarded as entireties * * *. [Emphasis added.]

In our prior opinion on the fishing reel spools at bar we quoted that passage with emphasis on the statement that the *evidence* had definitely established that the tips were *indispensable* to the performance of the manifold functions for which the indicators were designed. We then pointed out that the second spools for the "Mitchell 300" reels were "not indispensable to the principal use of the reels."

In the retrial which has now come to us for review the importer took the deposition of the inventor-designer of the "Mitchell 300" reel and the testimony of four new witnesses and one of the former witnesses for the purpose of showing, as the lower court has now found it did successfully, that *both* of the spools imported with the spinning reel were necessary to enable the reel to perform the manifold operations for the performance of which the "Mitchell 300" reel was expressly designed, with the objective of eradicating the *factual* basis on which we, as well as the lower court, had previously distinguished this case from the *Norma* and *Scherr* cases. This new evidence is substantial and occupies nearly 100 printed pages.

Additionally the parties stipulated certain important facts which may be summarized as follows: The Mitchell 300 spinning reel can be and is used in both light and heavy fishing; it has two spools of different construction material, and line capacity; the small capacity spool is used in light fishing and the large capacity spool in heavy fishing; it is imported, bought and sold as a reel having two spools; it is always sold with two spools and is so sold throughout the United States.

For clarity it might be well to state that, in the words of a witness who is an expert in fishing, light fishing is fishing for small fish, using a light line of the order of 6-pound test and heavy fishing is fishing for larger fish with a 12-pound test line. Further, the record shows that one of the desiderata for heavy fishing is that the reel spool have a capacity of at least 200 yards of heavy line and that the spool be subject to greater drag than in light fishing.

In the prior *Garcia* case the Customs Court said, with respect to the facts there established:

It seems quite clear * * * that, except for very heavy or very light spinning reels, which are by their very nature each used for only one type of fishing, all spinning reels of the size of the imported reels may be used for more than one purpose and that *there is nothing particularly or peculiarly characteristic of the imported reel which sets it apart from other spinning reels* with respect to susceptibility of use for more than one type of fishing.

The record shows, also, that the majority of *such* reels are sold as a complete commercial entity with only one spool, and that purchasers may, and often do, purchase *additional* spools, some of identical capacity, so as to have a *spare*, and some of different capacity from that furnished with the mechanism, so as to secure the benefit of being able to use the reel for more than one type of fishing.

We are of the opinion that, *on the record facts*, the *extra* spool furnished with the reels at bar is not part of a commercial and tariff entity known as a fishing reel. [Emphasis ours.]

In affirming that decision we said (45 CCPA at p. 2) :

While some of the testimony consists of opinions rather than statements of fact, and is in some respects inconsistent, we think it is ample to support the conclusion of the Customs Court that the *extra* spools enclosed in the import and sale packages are not entireties with the reel mechanisms and spools also contained therein.

Now, after a retrial, the Customs Court on a new record has come to a different conclusion as to what the facts are with respect to the "Mitchell 300" reel with its two spools and its relation to other spinning reels. On the basis of its new fact findings the lower court has concluded that the instant imports fall within the principles set forth in the *Norma* and *Scherr* cases so as to be correctly classifiable only as entireties. Again we are faced with the problem whether the record is "ample to support the conclusion of the Customs Court," for, as we said in *United States* v. *F.W. Meyers & Co., Inc.*, 45 CCPA 48, 52, C.A.D. 671,

It is well established that this court will not reverse the lower court on a question of fact except where the findings are without evidence to support them, or are clearly contrary to the weight of the evidence. *Carey & Skinner, Inc.* v. *United States,* 42 C.C.P.A. (Customs) 86, 90, C.A.D. 576.

And it is to be observed that there was no issue as to the law in our prior opinion, the authorities having been distinguished from the case before us on the basis of differences in facts.

In the added light of the new evidence, the lower court abandoned its former finding that there was nothing about the Mitchell 300 to set it apart from other spinning reels and concluded that "the reels and spools at bar are unique and differ from all other fishing reels." We think, from our own review of the record, that this conclusion, redundant though it may be, is fully justified. In essence, the reasons for it are that the "Mitchell 300" was deliberately designed as a dual purpose reel which would be of light weight but have the capacity for heavy as well as light fishing. To this end the spool reciprocating mechanism was changed from the usual crank type, producing a sinusoidal movement, to a double-rack type producing straight-line reciprocation which would lay the line level on a spool with widely spaced flanges. The spools were made with flanges thus

widely spaced in order to give adequate line capacity to the spool for the heavy line, which was made of metal for strength. The light fishing spool was made with a thick hub and of plastic to suit its particular function. The drag mechanism was placed in the spools instead of in the reel body so that each spool has its own appropriate drag. The Customs Court concluded:

On the basis of the facts now established by the entire record, we are satisfied that the "ordinary and proper functions" of the reel at bar are for use in light or heavy fishing; that it was designed, made, and sold for both such functions; and that the reel is *incapable of performing those functions without both spools.* We, therefore, hold that the two spools are constituent or integral parts of the reels at bar and that the reel and two spools are entitled to classification as an entirety. [Emphasis ours.]

The Customs Court explained how the newly found facts bring the imports at bar within the principles of the *Norma* and *Scherr* cases in such full, clear, and concise fashion that we can do no better than to quote from its opinion.

Examining the complete record before us, in the light of the *Norma* and *Scherr* decisions, we are of the opinion that the facts in the case at bar are so analogous in all material respects to those in the two cited cases as to require the application of the principle of law set forth in those cases. The article before us is a fishing reel, designed, made, and sold as a multi-purpose fishing reel, that is to say, one having a wider range of use than can be accomplished by any single-purpose fishing reel, even when the spools of the latter may be altered or adapted. That wide range of use is achieved by the use of a specially designed mechanism and specially designed, detachable spools.

Such an article, in its tariff aspect, is analogous to the machine tool involved in the *Norma* case which, with its detachable parts, could perform a wide range of grinding operations, and to the machine tool designed to drill metal, referred to in the opinion of our appellate court in the *Norma* case to illustrate the point, which could drill "all the different sized holes for which it was designed."

In the present case, the reel mechanism, with the two spools furnished therewith, can be used for all the different types of fishing for which it was designed, which cannot be achieved by other, single-purpose reels, even when altered or adapted. The reel mechanism in the case at bar combined with only one spool— to borrow phraseology and reasoning from the opinion in the *Norma* case— "could perform only a part of its functions, while its availability, desirability, and practical use and value" depend upon its ability to be used for a wider range of fishing than can be provided by any one spool.

Similarly, with respect to the speed indicators involved in the *Scherr* case, if one wished to measure the speeds of rotating shafts, he would be limited to measuring the speed of only one type of shaft if he did not have the detachable tips. Yet the instrument was designed, made, and sold as a device for measureing speeds of more than one type of shaft. So too, without both of the spools supplied with the reel mechanism, the article would have a limited function and one not in accordance with the purposes for which it was designed, made, and sold.

Defendant argues that "It cannot be denied that the spinning reel with one spool is a complete fishing reel." Of course, the statement can be denied. The

fact is that *some* spinning reels are *complete* fishing reels with only one spool, but this is not to say that *all* spinning reels are complete fishing reels with only one spool. * * *

It seems to us, in harmony with the reasoning of the appellate court in the *Norma* case, that if a spinning reel was designed, made, and sold for more than one type of fishing, it would not be a complete spinning reel without all of the parts that are essential to use it for any of the types of fishing for which it was designed, made, and sold. Such a reel would not be a complete fishing reel when it has only such parts as permit limited, rather than full, use of it.

Defendant states in the brief filed in its behalf that "It also cannot be denied that two spools cannot be used at the same time with only one reel." No one seeks to deny such a statement, but the real question is whether it is a *sine qua non* of a tariff entirety that all of its parts must be used or be capable of being used at the same time. Certainly, the decisions in the *Norma* and *Scherr* cases, relating to articles which are used with alternate parts depending upon the function of the article desired to be performed, and the logic upon which those decisions are based, are directly contrary to any such proposition.

We have carefully considered the arguments of the Government urging us to reverse the Customs Court but are unable to find error in its opinion or judgment. The Government's first point is that the reel mechanism with one spool is "a complete fishing reel." This cannot be disputed in the sense that one can fish with it, but as we view the matter, that does not determine the issue whether for tariff purposes and under the law the imported merchandise is entitled to classification as an entirety. The facts in the *Norma* and *Scherr* cases answer this point.

The case of *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T.D. 41232, cited, we find neither analagous nor in point.

The Government's second and final point is that the rule of *stare decisis* requires reversal. It should be apparent from what we have already said that the rule is not applicable by reason of the new evidence and the new factual basis on which we must proceed. We are aware, as has been pointed out to us, that the law has not changed. But the facts have. And in the light of the factual situation as found below on more than ample evidence, we conclude that the law, previously found to be inapplicable, is now applicable.

The judgment of the Customs Court sustaining the protest is *affirmed*.